## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOHNATHON M.,

               Plaintiff,

     v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

               Defendant.

Case No. 21 C 04738

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Johnathon M.[1] seeks to reverse the final decision of the Acting Commissioner of Social Security denying his claim for Supplemental Security Income. The Acting Commissioner moves for summary judgment affirming the decision. For the reasons that follow, Plaintiff's request for reversal and remand [17] is denied, and the Acting Commissioner's motion for summary judgment [18] is granted.

## BACKGROUND

On September 11, 2018, Johnathon applied for Social Security Income ("SSI"), alleging disability as of December 1, 2016, due to seizure disorder, unspecified anxiety disorder, depression, perirectal abscess, and posttraumatic stress disorder ("PTSD") related to being shot in the head at the age of fifteen (before the date of onset alleged). Born on October 28, 1989, Johnathon was 28 years old when he applied for SSI. Johnathon has a tenth-grade education. (R. at 191, 417, 424). His work history includes working as a dishwasher in 2014, in a warehouse in

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name or alternatively, by first name.

2013, and as a packer/labeler in 2012. *Id.* at 21. He currently lives in an apartment with his girlfriend, their two children, and his girlfriend's mother. *Id.*

Johnathon's claims were initially denied on April 1, 2019, and upon reconsideration on September 6, 2019. (R. 15). Following Johnathon's written request for a hearing, on September 22, 2020, Administrative Law Judge (ALJ) Cynthia Bretthauer held a phone hearing. *Id.* Johnathon appeared and testified at the hearing alongside vocational expert ("VE"), Michelle Peters-Pagella. *Id.* On February 3, 2021, the ALJ issued a decision denying Johnathon's application for SSI and concluded that Johnathon was not disabled. *Id.* at 15-28. The opinion followed the required five-step evaluation process. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

At step one, the ALJ determined that Johnathon had not engaged in substantial gainful activity since September 11, 2018, the application date. *Id.* at 17. At step two, the ALJ found that Johnathon had two severe impairments: seizure disorder and unspecified anxiety disorder. *Id.* The ALJ determined that Johnathon's history of depression and a perirectal abscess had no long-term effects and were non-severe. *Id.* at 18. The ALJ also determined that there was limited evidence in the medical record as to PTSD. *Id.* At step three, the ALJ concluded that Johnathon did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). *Id.* at 18.

At step four, the ALJ concluded that Johnathon retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations:

> can never climb ladders, ropes and scaffolds; should avoid even moderate exposure to unprotected heights and moving and hazardous machinery; should be limited to simple and routine, unskilled, 1-3 step instructions, with routine changes only; and should be limited to jobs requiring only occasional contact with the

>general public, should work primarily alone, and have only
>occasional contact with co-workers.

*Id*. at 20.  As a result of the RFC determination, the ALJ concluded at step four that Johnathon did

not have any past relevant work. *Id*. at 26.  However, at step five, the ALJ found that considering

Johnathon's age, education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Johnathon can perform, such as: cleaner, laundry worker,

and sorter. *Id.* at 27.  Because of this determination, the ALJ found that Johnathon was not disabled.

*Id.* at 28.  On July 7, 2021, the Appeals Council denied Johnathon's request for review, leaving

the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-3; *Prater v. Saul*, 947 F.3d

479, 481 (7th Cir. 2020).

## <u>DISCUSSION</u>

Under the Social Security Act, disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine whether

a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently

unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's

impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt.

P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5)

whether the claimant is unable to perform any other available work in light of her age, education,

and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Clifford v. Apfel*, 227 F.3d 863,

868 (7th Cir. 2000).  These steps are to be performed sequentially. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).  "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a

finding that the claimant is disabled.  A negative answer at any point, other than Step 3, ends the

inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Furthermore, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the" ALJ's. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Nonetheless, where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Johnathon raises one argument in support of his request for reversal and remand. He contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to include the disabling portion of Dr. Kenneth M. Levitan's opinion regarding Johnathon's ability to retain instructions. Doc. [17] at 6. Specifically, Johnathon finds fault with the ALJ's failure to include any finding about retaining instructions for more than a number of working days in the RFC. *Id.* at 7; Doc. [20] at 1.

However, the ALJ considered Johnathon's mental limitations and included her analysis of Johnathon's ability to remember or retain information and the supporting evidence from Dr. Levitan's report in the RFC. (R. 25). The ALJ's RFC also included limitations on the types of instructions that Johnathon should receive, which accommodates Johnathon's mild limitation in understanding, remembering, or applying information. *Id.* at 20.

4

First, the ALJ analyzed Johnathon's mild memory limitation. In the ALJ's step two analysis, preceding her discussion of Dr. Levitan's report, the ALJ found that Johnathon had a mild limitation in understanding, remembering, or applying information. (R. 19). The ALJ considered Johnathon's medical records, including clinical assessments, and determined the records showed no serious deficits in memory, insight, and judgment. *Id.* (citing R. 419).[2] Specifically, the ALJ relied on two 2019 consultative examinations conducted by Dr. Harris Aleem and Dr. Levitan to conclude that Johnathon provided a good history of his medical care to treating and examining practitioners.[3] *Id.* at 19, 419, 423-424. On January 23, 2019, Dr. Aleem concluded, among other things, that Johnathon's memory appeared intact, he knew the name of the current president, his affect was normal, and he was alert and oriented to time, place, and person. *Id.* at 419.[4] On February 22, 2019, Dr. Levitan concluded that Johnathon could perform simple and routine tasks; he would have difficulty handling moderate work pressure and stress; he could communicate with co-workers and a supervisor; and he could follow and understand instructions, but he might have difficulty retaining them for more than a number of working days. *Id.* at 426. Dr. Levitan opined that Johnathon's recent memory seemed fair because he remembered arriving at the appointment by car, the specific route taken, and the doctor's last name. *Id.* at 425. Dr.

---

[2] Thus, this case is distinguishable from cases where the ALJ did not offer any analysis connecting the functional limitations found at step two with the RFC. *See Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *4 (N.D. Ill. Apr. 8, 2022) (remanding where the ALJ did not account for the claimant's functional limitations in her RFC analysis at all); *Barbara B. v. Kijakazi*, No. 20 CV 547, 2021 WL 5937766, at *2 (N.D. Ill. Dec. 16, 2021) (remanding where the ALJ formulated an RFC that lacked any "mental health restrictions and failed to explain why limitations were not warranted.").

[3] Johnathon does not claim that he could not engage in the activities listed in either Dr. Aleem's or Dr. Levitan's examinations and provides no evidence of a greater degree of limitation. When asked at the hearing about his girlfriend's career, Johnathon explained that she stopped working to stay at home with him due to his seizures. (R. 41). Not as a result of any memory or retainment of information concern.

[4] The medical opinion of Dr. Aleem is not at issue in this action. Doc. [20] at 2 n.2.

Levitan opined that Johnathon's remote memory seemed fairly good for past dates and events in his life because Johnathon was able to complete simple addition and subtraction equations, name past presidents, and list cities. *Id.* Ultimately, the ALJ found Dr. Levitan's findings persuasive because the record supported his explanation of Johnathon's mental limitations. *Id.* at 25.[5] The ALJ further explained that the limitations were not so severe as to preclude work activity as reflected in the record. *Id.* As a result, the ALJ concluded that Johnathon had a mild limitation in his ability to understand, remember, or apply information. *Id.* at 19.

Second, the ALJ included memory limitations in the RFC. Dr. Levitan provided four relevant opinions regarding Johnathon's mental limitations: (1) Johnathon could perform simple and routine tasks; (2) he would have difficulty handling moderate work pressure and stress; (3) he could communicate with co-workers and a supervisor; and (4) he could follow and understand instructions, but he may have difficulty retaining them for more than a number of working days. (R. 426). After consideration of the full record and in light of Johnathon's memory impairment as reflected by Dr. Levitan and Dr. Aleem, the ALJ's mental RFC finding provided that Johnathon should be limited to: (1) simple and routine; (2) unskilled; (3) one to three step instructions, (4) with routine changes only; (5) only occasional contact with the general public, and (6) should work primarily alone, having only occasional contact with co-workers. *Id*. at 20.

Johnathon does not challenge the ALJ's determination that his ability to understand, remember, or apply information was a non-severe impairment. Nevertheless, Johnathon argues that the ALJ's limitation failed to include any accommodation for retaining instructions for more

---

[5] Johnathon's reliance on cases discussing rejecting or discounting the opinion of a physician is distinguishable because the ALJ found Dr. Levitan's opinion persuasive. *See* Doc. [17] at 8; Doc. [20] at 3 (citing *Beardsley v. Colvin* 758 F.3d 834, 839 (7th Cir. 2014)).

than a number of working days and whether Johnathon could retain these instructions on a continuing basis based on Dr. Levitan's opinion. Doc. [17] at 7.

The Court disagrees. The ALJ crafted an adequate RFC to accommodate Johnathon's mild memory limitation. At the outset, there is no requirement that an ALJ must use any "magic words" in an RFC assessment, and "reversal is not required so long as the assessment 'incorporate[s] all of the claimant's limitations supported by the medical record.'" *Treva L. v. Kijakazi*, No. 21 C 5199, 2022 WL 3700829, at *9 (N.D. Ill. Aug. 26, 2022) (citing *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)). Nor is an ALJ required to "rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citation omitted). Rather, the ALJ's RFC limitations must be articulated in a manner that builds a logical bridge from the evidence to the conclusion, *see Fisher v. Berryhill*, 760 Fed. Appx. 471, 476 (7th Cir. 2019) (explaining that the "substantial evidence" standard requires the building of "a logical and accurate bridge between the evidence and conclusion"), and "account[s] for the totality of a claimant's limitations in determining the proper RFC," *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (internal quotation marks and citations omitted).

Here, the ALJ's RFC formulation accommodated Johnathon's memory limitations. As explained above, Dr. Levitan's opinion provided that Johnathon could follow and understand instructions, but he may have difficulty retaining them for more than a number of working days. (R. 426). In response to Dr. Levitan's opinion, the ALJ limited Johnathon to one to three step instructions, with routine changes only. *Id*. at 20. The RFC also limited Johnathon to simple and routine, unskilled work. These limitations sufficiently accommodated Johnathon's difficulty with retaining instructions for more than a number of working days, as he was limited to work where he could function and that he could perform despite these limitations. The RFC specified the

complexity of instructions that Johnathon would be asked to recall (simple, one to three step), the tasks that Johnathon would be asked to perform (unskilled), and the degree of changes in those tasks (routine). Thus, Johnathon was given an RFC where his difficulty in retaining instructions for more than several days would not impede his functioning.

Courts have held that similar limitations to those at issue here can accommodate a claimant's memory impairment. For example, in *Ramos v. Berryhill*, the agency physician determined that the claimant was "moderately limited in the ability to understand and remember detailed instructions." No. 16 CV 9378, 2018 WL 4005191, at *3 (N.D. Ill. Aug. 22, 2018) (citation omitted). The court held that the following RFC limitation, which was not identical to the physician's opinion, accommodated the claimant's memory impairment by including limitations in concentration, persistence, or pace: "limited to performing simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, and few, if any, workplace changes." *Id*. at *8[6] (citation omitted). Here, the RFC at issue is analogous to the RFC accommodation in *Ramos*. In Johnathon's case, the RFC crafted by the ALJ accommodated his mild memory impairment by limiting him to simple and routine, one to three step instructions with routine changes only. (R. 20). Like in *Ramos*, Johnathon's RFC accommodations limited both the types of tasks (simple and routine, one to three step instructions) and the degree of changes to those tasks (routine changes only). *Id*. Going further, the ALJ's RFC in Johnathon's case also explicitly includes the word "instructions" and provides the types of instructions that Johnathon should be limited to, those with one to three steps and routine changes only. *Id*.

---

[6] While the court in *Ramos* remanded for other reasons, the court held that the ALJ properly considered memory limitations. 2018 WL 4005191, at *8.

Moreover, the Seventh Circuit's decision in *Surprise v. Saul*, 968 F.3d 658 (7th Cir. 2020), is also on point. In *Surprise*, the Seventh Circuit upheld the ALJ's RFC limiting the claimant to "perform[ing] routine, repetitive tasks and follow[ing] simple, non-complex instructions," despite the medical expert's testimony limiting the claimant to "direct, one or two steps or three steps that can be easily followed" because there was "no conflict, obvious or otherwise" – and the claimant had identified none – "between a one- to three-step instruction limitation" and the ALJ's RFC formulation. *Id*. at 662-63. Likewise, this case is analogous to *Surprise* where the ALJ's RFC accommodation was not identical to the medical expert's opinion. In Johnathon's case, the ALJ limited Johnathon to simple and routine, one to three step instructions with routine changes only. (R. 20). Like in *Surprise*, this Court finds no conflict between the ALJ's RFC accommodations and Dr. Levitan's opinion that suggested Johnathon might have difficulty retaining instructions for more than a number of working days. *Id*. at 426. Ultimately, the ALJ's RFC accommodations in Johnathon's case are comparable to the accommodations upheld in both *Ramos* and *Surprise*. *See also Kevin B. v. Saul*, No. 19 C 1655, 2020 WL 2468131, at *7 (N.D. Ill. May 13, 2020) (finding "ALJ's limitation of simple, routine tasks with simple decision-making was consistent with [Plaintiff's] reported problems with memory and concentration."); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (affirming the ALJ's RFC restrictions of simple, repetitive tasks and limited interactions with others to account for the claimant's moderate CPP limitations because the record medical evidence showed mental limitations present only under specific conditions).

There is no requirement, nor does Johnathon cite one, that provides that the ALJ must use the exact words from Dr. Levitan's opinion in the RFC assessment. Contrary to Johnathon's claim, no explanatory gap exists between the medical evidence and the RFC because the ALJ evaluated Johnathon's mental limitations and built a logical bridge between Johnathon's memory-based

limitations and the accommodations in the RFC. In essence, Johnathon's argument is "nothing more than a dislike of the ALJ's phraseology[,]" *Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir.) (quoting *Rice*, 384 F.3d at 371), and that is insufficient to warrant remand.

Furthermore, although "the ALJ has a duty to develop a full and fair record," *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000), the ALJ is entitled to assume that a claimant represented by counsel "is making his strongest case for benefits," *Nicholson v. Astrue*, 341 F. App'x 248, 253 (7th Cir. 2009) (citing *Glenn v. Sec'y of Health and Human Servs.,* 814 F.2d 387, 391 (7th Cir.1987)). Ultimately it was Johnathon's burden to produce evidence to support his claims of disability. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). On September 22, 2020, Johnathon, his attorney—Devyn Cook, the ALJ, and a VE all attended a phone hearing where Johnathon and the VE provided testimony. (R. 35). At no point during the hearing did Johnathon or his attorney mention memory issues or concerns with retaining or remembering information. *Id*. at 35-73. When the ALJ asked Johnathon about any mental symptoms he might be suffering, Johnathon mentioned depression, headaches, and anxiety. *Id*. at 57-59. Notably, he did not mention memory. Johnathon's attorney also had an opportunity to direct Johnathon's testimony and question the VE. *Id*. at 63-67, 70-72. Again, there was no mention of memory concerns and no hypothetical posed to the VE regarding memory limitations. *Id.*

Finally, Johnathon argues that Dr. Levitan's opinion regarding a limitation on retaining information for *more than a number of working days* would preclude Johnathon from carrying out a job with instructions 85 perfect of each workday and would justify a finding of disability under SSR 85-15. Doc. [17] at 8-9 (emphasis added). However, Johnathon's argument is more appropriately treated as an invitation for this Court to reweigh the evidence, which the Court cannot do. SSR 85-15 is a Social Security Ruling, titled "Capability to do Other Work – The Medical-

Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments." SSR 85-15, 1985 WL 56857 (S.S.A. 1985), at *4. The ruling provides, in important part, that "[a] substantial loss of ability to meet any of these basic work-related activities [including remembering simple instructions] would severely limit the potential occupational base. This, in turn, would justify a finding of disability." *Id*. However, Johnathon fails to point the Court to any part of the record indicating that he would be unable to retain instructions for 85 percent of a single workday. After reviewing the record, the Court also does not see any evidence to indicate that Dr. Levitan concluded that Johnathon would be unable to retain instructions for 85 percent of a workday or that Johnathon suffered a substantial loss of his ability to remember simple instructions as required by SSR 85-15. Indeed, according to the record, Dr. Levitan opined that Johnathon could follow and understand directions. (R. at 426). Johnathon also appears to misunderstand Dr. Levitan's opinion, which discusses Johnathon's ability to retain information over a number of working days, not within one working day. *Id*. Thus, this is not a case where the ALJ ignored mental functional limits found at step two or three during the RFC assessment.

Accordingly, because the ALJ's decision is supported by more than a mere scintilla of evidence and a reasonable mind can accept this evidence as adequate to support the conclusion, Johnathon's challenge to the ALJ's decision fails.

## CONCLUSION

For these reasons, the Court denies Plaintiff's request for reversal and remand [17], grants the Acting Commissioner's motion for summary judgment [18], and affirms the ALJ's decision.

**SO ORDERED.**

Dated: September 27, 2022

_____

Sunil R. Harjani
United States Magistrate Judge

11